SWANSON v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SWANSON v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SWANSON v. STATE
2021 OK CR 2
Case Number: F-2019-753
Decided: 03/11/2021
CHAD DEREK SWANSON, Appellant v. STATE OF OKLAHOMA, Appellee.
Cite as: 2021 OK CR 2, __ __

 

  
 

 SUMMARY OPINION
 

 
 LUMPKIN, JUDGE:
 
 
 ¶1 Appellant, Chad Derek Swanson, has appealed to this Court from orders of the District Court of Cleveland County, entered by the Honorable Jeff Virgin, District Judge, terminating him from drug court and sentencing him in accordance with the drug court contract in Case Nos. CF-2014-103 and CM-2014-2578.
 
 ¶2 On December 10, 2014, in Case No. CF-2014-103, Appellant pled guilty to felony driving under the influence. Pursuant to a plea agreement, he entered the drug court program. On May 13, 2015, in Case No. CM-2014-2578, Appellant pled guilty to the misdemeanor offenses of possession of marijuana and possession of drug paraphernalia. Pursuant to a plea agreement, the misdemeanor cases were incorporated into the drug court agreement. According to the terms of the agreement, if Appellant successfully completed the program, the charges would be dropped. If he did not successfully complete the program, he would be sentenced to six years imprisonment for driving while intoxicated and to one year incarceration for the misdemeanor offenses, to be served concurrently.
 
 ¶3 On March 13, 2019, the State filed a motion to remove Appellant from the drug court program alleging that he had committed the new offense of residing within 2000 feet of a school as a sex offender. On October 4, 2019, after a hearing, Judge Virgin granted the State's motion to terminate and sentenced Appellant pursuant to the drug court contract.
 
 ¶4 On appeal, Appellant first contends that the district court abused its discretion when it terminated him from the drug court program. Appellant is correct that we review such decisions for an abuse of discretion. Lewis v. State, 2009 OK CR 30, ¶ 10, 220 P.3d 1140, 1143. However, we do not find an abuse of discretion under the facts presented.
 
 ¶5 As a registered sex offender, Appellant could not live within 2000 feet of a school. Additionally, Appellant was required to register with local law enforcement if he resided or intended to reside at a location for seven consecutive days or fourteen days in a sixty day period. The evidence sufficiently demonstrated that, by virtue of his frequent overnight stays, his mother's house had become his residence and that the residence was within 2000 feet of a school. This new offense violated the performance contract.
 
 ¶6 While violation of even one condition of probation is sufficient to warrant termination, Wallace v. State, 1977 OK CR 154, ¶ 8, 562 P.2d 1175, 1177, here Appellant had close to fifty violations for which he had been sanctioned with everything from writing essays to six months of incarceration in the Department of Corrections. Appellant simply was not responding positively to the program. Termination under these circumstances was not an abuse of discretion. See Walker v. State, 1989 OK CR 65, ¶ 5, 780 P.2d 1181, 1183 (describing an abuse of discretion as "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented in support of and against the application"). Proposition One is denied.
 
 ¶7 In his remaining proposition of error, Appellant claims that because the motion to terminate was filed more than three years after he entered the program, the District Court did not have jurisdiction to terminate and sentence him. Appellant bases his argument on 22 O.S.Supp.2016, § 471.6(G). This Section deals with timing issues related to drug court participant treatment and supervision and has no bearing on the timing of the filing of an application to terminate or the District Court's jurisdiction. Proposition Two is denied.
 
 DECISION
 
 ¶8 The order of the District Court of Cleveland County terminating Appellant from drug court and sentencing him in accordance with the plea agreement in Case Nos. CF-2014-103 and CM-2014-2578 is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2021), the MANDATE is ORDERED issued forthwith upon the filing of this decision with the Clerk of this Court.
 
 AN APPEAL FROM THE
 
 DISTRICT COURT OF CLEVELAND COUNTY
 
 THE HONORABLE JEFF VIRGIN, DISTRICT JUDGE
 
 
 
 
 
 APPEARANCES IN THE TRIAL COURT
 
 KEVIN FINLAY
 
 Indigent Defense System
 
 P.O. Box 926
 
 Norman, OK 73070
 
 COUNSEL FOR APPELLANT
 
 THOMAS SASSER
 
 Assistant District Attorney
 
 201 South Jones, Third Floor
 
 Norman, OK 73069
 
 COUNSEL FOR THE STATE
 
 
 
 APPEARANCES ON APPEAL
 
 NICOLLETTE BRANDT
 
 Appellate Defense Counsel
 
 P. O. Box 926
 
 Norman, OK 73070
 
 COUNSEL FOR APPELLANT
 
 MIKE HUNTER
 
 Oklahoma Attorney General
 
 KEELEY L. MILLER
 
 Assistant Attorney General
 
 313 N.E. 21st Street
 
 Oklahoma City, OK 73105
 
 COUNSEL FOR THE STATE
 
 
 
 
 
  
 
 
 OPINION BY: LUMPKIN, J.:
 
 KUEHN, P.J.: Dissent
 
 ROWLAND, V.P.J.: Specially Concur
 
 LEWIS, J.: Concur in Part/Dissent in Part
 
 HUDSON, J.: Specially Concur
 
 

 

 

 
 KUEHN, P.J., DISSENTING:
 
 
 ¶1 Disregarding the plain language of the law, the Majority continues to find no limits on a trial court's authority to punish under the Drug Court Act. See Wall v. State, Case No. F-2017-1055, (Okl.Cr.) (unpub. Oct 10, 2019). I find merit to Appellant's claim that the trial court lost jurisdiction to terminate him from the Drug Court Program, and therefore dissent, as I did in Wall.[1]
 
  
 
 ¶2 Appellant claims the trial court lost jurisdiction to terminate his participation in Drug Court -- and, importantly, to impose the sentence previously agreed upon if he were to fail the program -- because the State waited far too long to file its Application to Terminate. The Legislature mandates that Drug Courts have three years to try to rehabilitate an addict. Title 22, Section 471.6(G) clearly states (with emphasis added):
 
  
 
 ;The period of time during which an offender may participate in the active treatment portion of the drug court program shall be not less than six (6) months nor more than twenty-four (24) months and may include a period of supervision not less than six (6) months nor more than one (1) year following the treatment portion of the program. The period of supervision may be extended by order of the court for not more than six (6) months. No treatment dollars shall be expended on the offender during the extended period of supervision.
 
 ¶3 Appellant entered Drug Court on December 3, 2014. His guilty plea to a new drug case in May 2015 was incorporated into his Drug Court contract. In March 2019 -- over four years after Appellant initially entered Drug Court -- the State filed an Application to Terminate, alleging that Appellant had committed yet another crime which warranted termination from the Drug Court program. Even if incorporation of the 2015 case reset the three-year clock, the trial court still lost jurisdiction to terminate Appellant's participation -- and to impose sentence per the original agreement -- by May 2018. The State claims that the trial court retained power to terminate Appellant from Drug Court indefinitely, even if that means a termination date equating to infinity.
 
 ¶4 The Majority summarily dismisses Appellant's "jurisdiction" claim with no analysis or citation to authority, and merely regards the plain language of Section 471.6(G) as dealing with "timing issues" regarding treatment and supervision, not enforcement of the original agreement. Similarly, the Special Concurrence claims jurisdiction to enforce the agreement is not at issue because the word "jurisdiction" is never used in the statute. I cannot agree.
 
 ¶5 First, by citing In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 24, 326 P.3d 496, 507, the Special Concurrence concedes that overall legislative intent controls over particular use of the word, "jurisdiction." The Legislature need not "incant magic words in order to speak clearly"; this Court can consider "context," which includes this Court's "interpretations of similar provisions in many years past," as probative of whether the Legislature intended a particular provision to affect a court's jurisdiction. Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153-54 (2013).[2]
 
  
 
 ¶6 When considering limits on the trial court's authority to enforce a Drug Court contract, the best analogy is to a trial court's authority to revoke a suspended sentence, or (better still) accelerate a deferred sentence. Many times over the past century, this Court has held that even when defendants are granted probation as a matter of judicial grace, trial courts cannot hold them accountable forever. Sometimes the word "jurisdiction" is used, and sometimes not. The statutes at issue never used the term. But the principles are the same.
 
  
 
 ¶7 In Ex parte King, 1928 OK CR 152, 266 P. 511, the defendant received a two-year sentence, suspended on conditions of probation, for larceny. Twenty-one days after the term had expired, the State alleged that he had violated the conditions of that probation, and the defendant was arrested. The defendant alleged that his confinement was illegal because the trial court lost authority to punish him. This Court agreed and, quoting at length from Ex parte Eaton, 1925 OK CR 107, 233 P. 781, found that the trial court was "without power to enforce the original judgment":
 
 [T]he question for determination is: Does the district court have power under the statute above quoted to revoke the suspended sentence after the time covered by the sentence had run? ... After the expiration of the term of the sentence, [the defendant] was no longer required to report, and the sentence was discharged. It was certainly not the intention of the lawmakers to hold the sentence over the head of the person paroled so long as he should live, but only during the pendency of the judgment. To hold otherwise would be contrary to the spirit and policy of the law.
 
 King, 1928 OK CR 152, 266 P. at 511 (quoting Eaton, 1925 OK CR 107, 233 P. at 782 (emphasis added).[3] More recently, in Bewley v. State, 1987 OK CR 160, ¶ 4, 742 P.2d 29, 31, this Court held that the district court lost "jurisdiction, that is, the judicial power and authority to hear and determine the issue of revocation" (emphasis added), where the State filed its application to revoke four days after the probationary term expired.[4]
 
  
 
 ¶8 This Court has reached the same result where a sentence is not suspended, but where imposition of judgment and sentence are actually deferred for a specified period. Deferred-sentence cases are even more analogous to Drug Court proceedings, since the original plea is held in abeyance for a certain time on certain conditions. The trial court loses authority to accelerate a deferred sentence, and punish under the original agreement, if the application to accelerate is filed after the agreed-upon term has expired. State v. Rodriguez, 1976 OK CR 68, ¶ 7, 547 P.2d 974, 975. "There are no exceptions." Id. It is worth noting that the application to accelerate in Rodriguez was filed a mere fifteen minutes after the probationary term expired. Id. at ¶¶ 3-4, 547 P.2d at 975. Jurisdiction does not depend on whether the Drug Court participant "deserves" to have judicial authority extended. If one more day is acceptable, why not forever? As this Court observed in Eaton:
 
  
 
 [I]f within one year after the sentence has terminated [] the court may revoke the suspended sentence or parole and compel the incarceration of the person paroled, it might do so at any time thereafter.
 
 Eaton, 1925 OK CR 107, 233 P. at 782.
 
 II
 
 ¶9 The Special Concurrence also employs a contract theory to interpret Section 471.6(G). By detailing how Appellant repeatedly flouted the provisions of the agreement he made with the court, the Special Concurrence suggests that allowing him to avoid enforcement of the contract under these circumstances is a form of unjust enrichment.
 
 ¶10 But contracts, including the one at issue here, have reciprocal obligations. Appellant's Drug Court contract contains this provision:
 
 I understand that the performance contract may be modified and/or amended by Order of the Court. I understand that I will be given written notice that the Court has modified the performance contract and will be given the date the modification or amended performance contract is effective and agree to abide by all amendments.
 
 Under the Majority's view that Appellant's probationary term could lawfully continue indefinitely until judgment was entered, the court also breached the contract, as it did not give Appellant written notice that it was modifying the duration of the contract. Of course, this provision would be a nullity if the plain language of Section 471.6(G) is followed. But this Court should not rewrite the contract, such that the trial court could unilaterally extend Appellant's obligations under it, without notice, forever.
 
 III
 
 ¶11 The plain language of Section 471.6(G) reflects important policy reasons for maintaining a finite period of jurisdiction. First, the Drug Court program is not funded with private money, but with taxpayer dollars. Accordingly, the Legislature included the following language in the statute: "No treatment dollars shall be expended on the offender during the extended period of supervision." If a district court's jurisdiction over Drug Court cases continues indefinitely, so will the hemorrhage of public funds.
 
 ¶12 Second, identifiable time frames gives participants an incentive to take treatment seriously; if they do not, they must leave to make room for those who will. Resources are scarce in our State for court-ordered treatment, and to keep one addict who consistently violates terms in the Drug Court program simply means that another qualified candidate is shut out. The plain language of Section 471.6(G) puts limits on how long a defendant can participate in the program, and how long taxpayer funds can be used to help him. It is clear that after a three-year chance at rehabilitation, the Legislature wanted non-compliant offenders terminated from the program, and the previously negotiated sentence imposed.
 
 ¶13 I agree that Appellant should have been terminated from the Drug Court program. But that only begs the question of why the State did not move to terminate him sooner.[5] I strongly believe in the mission of Drug Courts. They are a sensible and fiscally responsible way to address substance abuse issues. I recognize that Appellant's Drug Court team may only have been trying to help him by giving him extra chances. Drug Court judges, attorneys, and staff certainly have a difficult job deciding how long to tolerate violations. But this case demonstrates why a three-year jurisdictional limit is necessary to control State-funded drug courts.
 
 ¶14 Dismissal of Appellant's case on what some will perceive as a "technicality" is not something I take pleasure in. But as Supreme Court Justice Antonin Scalia once said, "The judge who always likes the results he reaches is a bad judge."[6] I cannot endorse a statutory interpretation that goes against the statute's plain language, no matter the outcome.[7] I would reverse the district court's entry of Judgment and Sentence as improper, and order the cases dismissed. I continue to urge the State to monitor each offender's Drug Court participation, and file a Motion to Terminate within the three-year limitation if an offender has failed to successfully complete the program.
 
 
 FOOTNOTES
 
 
 [1] In its brief, the State incorrectly argues that the Legislature does not see the need to clarify the statute after Flowal v. State (decided nine years ago) and its decision reiterated in Wall v. State one year ago. However, what the State fails to recognize is that both of these decisions were unpublished. This Court does not recognize unpublished decisions as anything but persuasive. There is no reason for the Legislature to treat them any differently.
 
 
 
 [2] In Nard v. State, 1965 OK CR 158, 412 P.2d 489, this Court interpreted its own jurisdiction to hear certain State appeals. The relevant law (22 O.S.Supp.1963, § 1054) required the State to perfect its appeal within ninety days from the date of the pronouncement of the judgment and sentence. This Court concluded that it was "without jurisdiction" to entertain a State appeal unless it was filed within time prescribed by the statute. "The [] statute must be strictly followed, and this Court acquires no jurisdiction to determine an appeal on its merits unless it is lodged within the time fixed [thereby]." Id. at ¶ 4, 412 P.2d at 490-91. All this, despite the fact that the statute in question never used the word "jurisdiction."
 
 
 
 [3] See also Ex parte Bell, 1935 OK CR 90, 47 P.2d 886 (trial court lacked authority to revoke suspended sentence over three years after suspended term had expired); In re Workman, 1942 OK CR 62, 124 P.2d 748 (trial court lacked authority to revoke suspended sentence over a year after suspended term had expired); Ex parte Miller, 1949 OK CR 27, 203 P.2d 890 (trial court lacked authority to revoke suspended sentence where application to revoke was filed one month after probationary term expired).
 
 
 
 [4] See also Mullins v. State, 1991 OK CR 39, ¶ 4, 808 P.2d 701, 702 (where State's application to revoke suspended sentence was filed one day after the expiration of the defendant's suspended sentence, the trial court was "without jurisdiction" to enter revocation order).
 
 
 
 [5] Appellant began violating the terms of his contract within weeks of entering into it. Five months and twelve violations later, he picked up the new charge for Possession of Marijuana. A year and a half into treatment (violation 29), he admitted using alcohol and cocaine. Still, no termination was sought. Two years into treatment, Appellant had at least 31 violations, including (1) tampering with his TAD Unit, (2) not serving numerous jail sanctions, (3) positive methamphetamine tests, (4) perjury, (5) using alcohol, (6) appearing high in court, (7) driving without a license, (8) driving without his SMART Start device, (9) resisting police, and (10) failing to appear for court numerous times. Amazingly, not once did the State move to terminate Appellant from Drug Court. The three-year mark came and went. Nine months after the three-year period expired, Appellant committed his 48th violation, finally prompting a Motion to Terminate.
 
 
 
 [6] Clare Kim, Justice Scalia: Constitution is "Dead," MSNBC (Jan. 29, 2013, 2:11 p.m.) https://www.msnbc.com/the-last-word/justice-scalia-constitution-dead-msna18304
 
 
 
 [7] "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Id.
 
 
 

 

 

 
 ROWLAND, VICE PRESIDING JUDGE, SPECIALLY CONCURRING:
 
 
 ¶1 In December of 2014, Swanson pleaded guilty to a felony DUI charge and entered the Cleveland County Drug Court program, agreeing that failure to complete it within three years would result in his incarceration for six years. He received his first disciplinary write-up that same month and the drug court sanctioned him with community service for violating his drug court performance contract. The drug court sanctioned him again in January of 2015, three times in February, three times in March, jailed him for eight days in April, and again for five days in May. Suffice it to say, he violated the terms of his contract, with sanctions of either community service or jail nearly every month during 2015, most months during 2016, and many months during 2017. In May of 2015, he pleaded guilty to possessing marijuana on December 4, 2014, which notably was the day after he signed his drug court performance contract promising not to do such things. The record contains a stack of drug court violations nearly an inch thick, and they include his admissions of using alcohol, cocaine, and methamphetamine while in the program. His three year anniversary date in December of 2017 came and went without any effort to terminate his participation in the program.
 
 ¶2 This pattern repeated itself throughout 2018; his violation write-ups were far fewer in number, but did include him showing up for drug court under the influence and the court imposing additional jail sanctions. Still, the drug court judge worked with Swanson, requiring him to write essays on what triggers his relapses and what he would do in the future to protect his sobriety. Finally, on March 7, 2019, Swanson failed to appear in court and the court issued a warrant for his arrest. A few days later, the State filed a motion to terminate his drug court participation and sentence him in accordance with the plea agreement.
 
 ¶3 It is against this factual backdrop that Swanson seeks to have his case dismissed because the State did not remove him from drug court before the three year mark. In making this claim before the district court, he likened allowing him to continue in drug court beyond three years and terminating him thereafter to being in a street gang where the only way out is either the penitentiary or the cemetery. That is colorful but unpersuasive.
 
 ¶4 Any analysis in this case must begin with the proposition that in exchange for avoiding prison, Swanson signed a written performance contract which he repeatedly and woefully breached. He maintains that by not taking steps to terminate him in 2017, the district court lost jurisdiction when it ultimately did so in 2019. He relies upon 22 O.S.Supp.2016, § 471.6(G):
 
 The period of time during which an offender may participate in the active treatment portion of the drug court program shall be not less than six (6) months nor more than twenty-four (24) months and may include a period of supervision not less than six (6) months nor more than one (1) year following the treatment portion of the program. The period of supervision may be extended by order of the court for not more than six (6) months. No treatment dollars shall be expended on the offender during the extended period of supervision. If the court orders that the period of supervision shall be extended, the drug court judge, district attorney, the attorney for the offender, and the supervising staff for the drug court program shall evaluate the appropriateness of continued supervision on a quarterly basis. All participating treatment providers shall be certified by the Department of Mental Health and Substance Abuse Services and shall be selected and evaluated for performance-based effectiveness annually by the Department of Mental Health and Substance Abuse Services. Treatment programs shall be designed to be completed within twelve (12) months and shall have relapse prevention and evaluation components.
 
 ¶5 Nothing in Section 471.6(G) even hints at divesting the district court of jurisdiction. Its clear aim is to prevent a participant from receiving the benefit and resources of the drug court program in perpetuity. To conclude that failure to meet this deadline extinguishes the court's jurisdiction reads too much into this administrative provision. Such statutory deadlines are not to be interpreted as jurisdictional absent express legislative directive. Cf. Brock v. Pierce County, 476 U.S. 253, 266 (1986) (holding an administrative agency does not lose jurisdiction for failure to act within specified time limits unless statute also specifies consequences of failure to act). Similarly, the Oklahoma Supreme Court has noted "the general rule that jurisdiction of a court, once correctly invoked, will not usually be divested by a subsequent event such as the passage of time unless a statute expressly states the contrary or if a legislative intent is shown that would make a time limit mandatory." In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 24, 326 P.3d 496, 507.
 
 ¶6 I in no way suggest that the State, or the court, or the drug court team should disregard the statutory language setting a three year limit on active drug court treatment and supervision. It may well be that a defendant who can show he or she was kept in drug court past the three year time limit, without any acquiescence or complicity on his or her part, and who was prejudiced thereby, has some other recourse. The defendant might claim a due process violation, or attempt to invoke the doctrine of laches, none of which is before us and I offer no opinion on those or other possible legal remedies that a defendant might have.
 
 ¶7 For these reasons, I concur with the majority opinion because nothing in the facts or law of this case in any way disturbed the district court's jurisdiction over Swanson's case.
 
 ¶8 I am authorized to state that Judge Hudson joins in this writing.
 

 

 

 
 LEWIS, JUDGE, CONCURRING IN PART AND DISSENTING IN PART:
 
 
 ¶1 I must address Appellant's argument that the trial court lost jurisdiction over his Drug Court case. I agree that the trial court did not lose jurisdiction. The trial court absolutely had subject matter jurisdiction over Appellant and nothing in the Oklahoma Drug Court Act's provisions divest a trial court of jurisdiction over a defendant. Rather I find that the trial court did not give Appellant any notice of the time constraints in which he would be required to complete drug court.
 
 ¶2 Obviously, it is to defendant's benefit to remain in the drug court program for as long as possible for successful completion. This is especially true, as in this case, where a defendant struggles with his adherence to the drug court contract. A defendant must either admit failure and go to prison, or agree to extend participation in drug court. No time limits given or expected.
 
 ¶3 The only guidance regarding the length of a drug court program are the treatment and supervision timing guidelines found in the statute. 22 O.S.Supp.2016, § 471.6(G). In reading the statute, a reasonable person would believe that drug court would be a three year program with the possibility of a six month extension. Appellant's argument, in part, is that the trial court failed to give him notice that the program would be extended beyond the three year treatment plan. With no concrete time limitations, a participant is at the mercy of the State.
 
 ¶4 No other delayed or deferred sentencing program in this State has an indefinite duration. I find that the error in this case revolves around the issue of notice and finality. I would reverse based on this lack of clear notice.
 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1977 OK CR 154, 562 P.2d 1175, WALLACE v. STATE
Discussed
 1989 OK CR 65, 780 P.2d 1181, WALKER v. STATE
Discussed
 1991 OK CR 39, 808 P.2d 701, MULLINS v. STATE
Discussed
 1925 OK CR 107, 233 P. 781, 29 Okl.Cr. 275, Ex parte Eaton
Discussed at Length
 1928 OK CR 152, 266 P. 511, 40 Okl.Cr. 21, Ex parte King
Discussed at Length
 2009 OK CR 30, 220 P.3d 1140, LEWIS v. STATE
Discussed
 1935 OK CR 90, 47 P.2d 886, 57 Okl.Cr. 257, Ex parte Bell
Discussed
 1942 OK CR 62, 124 P.2d 748, 74 Okl.Cr. 225, In re Workman
Discussed
 1965 OK CR 158, 412 P.2d 489, NARD v. STATE
Discussed
 1949 OK CR 27, 203 P.2d 890, 88 Okl.Cr. 441, Ex parte Miller
Discussed
 1987 OK CR 160, 742 P.2d 29, BEWLEY v. STATE
Discussed
 1976 OK CR 68, 547 P.2d 974, STATE v. RODRIQUEZ
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed at Length
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 471.6, Final Eligibility Hearing
Discussed at Length
 22 O.S. 1054, Time for Taking Appeal - Transcript - Notification of Nonfiling of Case Made or Transcript
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA